Good morning, Your Honors. David Loffer appearing for the appellants. Your Honor, I'd like to save a little time for questions and reply, if I may. I want to give you a little history of why the appellants are a little frustrated in this case. As you know, the original attack on Plaintiff's case was a 12b6 motion, where the Allstate sought to take judicial notice of a policy, AP 529. We opposed that motion and request for judicial notice based on the fact that we had proof, written admissions of Allstate's coverage counsel, its claims analyst, Susan Price, and the insurance agent, that our clients were added insurance. Counsel, what do we do with this discrepancy between the AU 9700 and the AP 529? There seems to be two different versions of the policy, and one side says it's the 9700, the other side says 529? Yeah. We contend that it's AU 9700, and we placed in the record the evidence of insurance that was prepared by the insurance agent, Mr. Haddad, who, prior to this litigation, said that the proper form was AU 9700. What did the trial court do with respect to that? Was there any finding that that? No. The trial court essentially said that there are disputed facts, so I'm not going to read AP 529, but I'm going to go ahead and convert the motion that was made on AP 529 to a motion that is made on AU 9700. That conversion of that motion took place at oral argument. At that point, Allstate represented to the court that the court could proceed to determine that issue because the policies were substantially the same. There was very significant difference, though. Absolutely correct. We argued, I asked the court as politely as possible not to go forward with a motion for summary judgment on AU 9700 because the motion was directed to AP 529. I specifically said, Your Honor, having determined that there's a disputed fact on AP 529 and AU 9700, do you direct me to argue whether or not there's coverage? And the court said proceed. At that point, what essentially happened was Allstate converted its summary judgment motion from AP 529 to AU 9700, and the appellant had the burden of proof to establish coverage, whereas, as we know, Allstate, the moving party, had the burden of proof to show that there was not one possible issue that came within the coverage. During that argument and in our opposition to the motion for summary judgment, we contended that the policies are substantially different and that Allstate had not met its burden of proof. Which policy did Judge Snyder assume was the policy that the governing policy with respect to coverage? AU 9700. 9700. 9700. Which is the one you've contended is the governing policy? Correct. And then the issue comes, then two issues come to Your Honors. Number one, she has made a determination that there is a dispute as to which policy governs, and number two, is there a material, does that change the case? And we contend that it does change the case because 9700 is much broader and clearly, in our view, makes it very, very clear by just reading the exclusions, exclusion 14, that it is not limited to defamation of a person, but broad enough to cover what we've called trade libel. But let me ask you this. Are you contending that you were so unfairly surprised when the district judge addressed and construed the policy that you'd been relying on that we need to send it back so you can do more briefing in front of the district judge, or are you contending simply that you win under AU 9700? I'm contending that the appellant would have been a better, done a better job quoting exclusion 14, had it had notice that the court was proceeding on that motion and on that policy. However, however, our position here is that the interpretation of AU 9700, since it's been made on the four corners of the policy, is a question of law, and we believe that a de novo review of that policy will lead you to the conclusion that there's potential coverage. So in your view, the briefing in front of us has been fully sufficient? Let's say the question is properly in front of us. So you're not really asking us to remand for the district court to redetermine. You're just asking us to decide what we think is within the coverage of 9700. That is correct. Yeah, yeah. So all of this, in a sense, is just prelude. Now let's talk about 9700. Correct. Okay. It's an excuse for not having focused on exclusion 14 in the trial court. That's what it is. I see. So I understand. I'm quite willing to address that argument on exclusion 14, given that. Sure, sure. Yeah. Well, you're relying on the misrepresentation coverage, right? Correct. In 9700? Correct. Why don't you develop that? Okay. Misrepresentation is a covered risk under the personal injury coverage. It is not defined, and we believe that misrepresentation should be interpreted by you in its broadest sense. In other words, misrepresentation must mean more than defamation or slander. Otherwise, it would not have been included in that clause. We also believe that to the extent that there is confusion or ambiguity as to its meaning, that under Jarrett v. Allstate, we have to read the entire policy to determine whether or not on your de novo review, whether misrepresentation is confined to defamation and slander of the person. And hence, we get to exclusion 14. We must understand that exclusion 14 is found in part two of the policy, coverage X, which is business liability. And here's what exclusion 14 says. Losses we do not cover. We do not cover personal injury arising from publication of libelous or defamatory remarks or from the utterance of slanderous and defamatory remarks concerning any business or service made by or at the direction of the insured person with awareness of its falsity. It is our contention, Your Honors, that the inclusion of business and service in that exclusion 14 evidences an intent that the personal injury clause is not confined to damage to a person's reputation. And we believe that is a de novo review. And as a matter of law, looking at the four corners of the document, I think this Court makes that determination and then reverses the judgment on that basis. We believe that that is the appropriate interpretation based upon Jarrett v. the Superior Court and Atlantic Mutual v. Lamb, which as you know, the Atlantic Mutual v. Lamb case was decided five years after Truck v. Bennett. And in the Lamb case, you will recall, the Court of Appeals said that the inclusion of the word disparage in the personal injury clause extended that beyond personal defamation to trade liable. And we believe that exclusion 14 clearly evidences an intent that this policy is not confined to defamation of the person. The second issue that Your Honors are asked to resolve is also quite clear on the record. You will remember that the second cause of action was for breach of the covenant of good faith and fair dealing. And the only basis upon which that motion was made and granted was the fact that the plaintiffs did not have standing. And there is a direct ruling in the Court that the plaintiffs do have standing. And there was no other basis in the notice of motion. You will see that the initial motion for summary judgment was approximately 11 pages, nine of which was devoted to prove that the appellants were not insured, two, that there was a general statement that there was no coverage because essentially these were intentional torts and they were arguing 533, which never arose below. We contend, we contend that in this particular case, number one, there was, there was standing. And we contend that because we had evidence that at the time that Allstate placed before the Court a motion to dismiss and a motion for summary judgment based upon the fact that the appellants were not insured, that they had records that we produced and admitted into the record that showed that since 1995, appellants had been insured both as mortgagee insurers. And as we go at great planes, great pains to point out to your honors, the policy AU 9700 affords all protection, including liability protection to the mortgagee. And therefore we say we come within Atlantic Mutual versus Lamb. Well, you recall the facts there were the insured sent out a letter claiming that a competitor's product infringed upon a patent and criticized the product. That personal injury coverage in that case provided, in addition to the libel, slander, et cetera, covered disparagement. And five years after Truk versus Bennett, the Court said that the disparagement meant that it encompassed business torts as opposed to just defamation and slander of the person. Let me ask you this, if I might. I'm on page 18 of the policy that is to say the exclusions. Losses we do not cover, number one. The first exclusion is the same section in which you're looking at exclusion number 14. Losses we do not cover, number one. We do not cover the injury, personal injury, or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is, in fact, intended by an insured person. It looks to me as though the allegations in the complaint, that is to say, the complaint against your client, the complaint that you tendered, allege intentional misrepresentation. So why does this exclusion not apply? First of all, this exclusion was not directed as a basis for holding that there was no coverage under 9700. We believe that's an issue. That argument was not made. Yes. But I would say the Court never decided that. No. But assuming you wanted to reach that issue, you will recall that the allegations were that when we filed the trust deed many years before, before the alleged tort occurred, that it's that act that caused the injury. So it could have never been intended because the filing of the trust deed preceded the Thelman's action. But assuming you wanted to reach that issue, we have a determination made after trial that there was no intentional conduct, that there was no fraud. So as this case comes to you, as this case comes to you, we have a final judgment that says that the amount demanded on this debt and an amount that the statute requires to preserve a beneficiary demand was lawfully owed. So that exclusion does not apply. Let me ask you this. You said that the argument was not made below on this exclusion. As I was rereading the briefs last night, I did not see the argument made by Allstate now that that exclusion applies. Correct. It's the they have not, they have not asserted any exclusions other than a request for you to make a determination that misrepresentation must be confined as interpreted in Truck v. Bennett. Okay. May I reserve the balance of my time? Just to be sure I understand your argument. What you're saying is that we at this stage can make an interpretation of the word misrepresentation in the policy which would, which could support a reversal without remand. Yes. Thank you. May it please the Court. My name is James Fitzgerald on behalf of Allstate. Let me first, Your Honors, and I think Judge Fletcher really came to the heart of it. And I'd like to not skip over, but say why, first of all, the whole issue of whether the appellants are insured under the policy or not is irrelevant to this appeal because the district court granted the summary judgment on coverage issues, whether or not the claims were covered under the policy, assuming for the purposes of the motion only, that they were insured and that policy 9700 applied. So we're not here, and I don't think it's relevant, actually, to argue AP 529 applies or 9700 applies. It's our position. We took that position that it doesn't matter that the language of both policies is, or both policy forms is similar enough that it doesn't make any difference. Except that one has the misrepresentation feature, which the other one doesn't. Isn't that correct? In the context of the group of wordings, as the Court noted, okay? So it's not misrepresentation of anything that the person could do in the world. It's misrepresentation in connection with the personal injury and the definitions. You know, I thought you were going to stay on track, but you, when you said you're just going to talk about 9700. But then you went right off the rails by saying the two policies are similar. Why should I care about the other policy? Well, all I'm saying is, just for the record, we're not conceding that 529 doesn't apply at some point. But for purposes of this appeal, that's all I'm saying. For purposes of this appeal, we're at 9700. As far as we're concerned, 9700 does not provide coverage. And here's why. We have clear California case law on this. We've cited it. The judge below cited it as well. That's the Truck v. Bennett case. The language and the definition within the truck case in that policy is virtually the same, identical. And the language and the reasoning that was written by the district in that is essentially the same here. Can I ask you about the intentional exclusion? You did not argue that exclusion number one excused the coverage here. You didn't argue it in the district court. Is that right? I don't think we made a specific reference to this. I know you didn't argue it here because I looked for it. Correct. Is that correct, that that exclusion does not apply here? No, I don't think it does. I think that it may very well apply here. That's such a great argument. Why didn't you make it? I think, Your Honor, we were so You're not a newcomer to this business. No, that's correct, Your Honor. You've seen this policy before. That's correct. Well, in addition to the policy, even if that exclusion wasn't in the policy, you still have 533 of the insurance, California Insurance Code, which basically says the same thing. I know. But what I'm asking you is, it occurs to me that you might decide that this is a great argument now that it's been raised here, but you never thought to make it until right this second. Well, what I'm saying, Your Honor, is this. We didn't make it below. We read the complaint, as we read the complaint, as basically alleging intentional acts only. However, that doesn't mean that someone could come along, the appellant here, and say, well, somehow it may say something other than intentional acts, and therefore, there could be a duty to defend. And liability might have fallen because it might have been a negligent misrepresentation nonetheless with the potential for a liability. If someone amended their underlying complaint. But I also think, for the record, that what Mr. Laffer said with regard to determining coverage, you don't determine the duty to defend after the underlying case is determined. It is determined at the beginning of the case when that comes out. Okay. But if I could, moving to the coverage under 9700, the Bennett case is clear. We were actually surprised, and are surprised still, that the appellant cite the case that they just did, the Atlantic case, because that case, when read, and written by the exact same district, although written by Justice Crosky, who is well-known in the coverage area, basically distinguishes that case and the policy language from the policy in Bennett, and says quite clearly, this is different. This is different than Bennett, and it's a different policy, and it provides a different kind of coverage. And the policy language in that policy is vastly different than the policy language in Truck v. Bennett and in AU 9700. Let me ask you this, focusing not so much on the case law for the moment, but on the actual policy. The district judge essentially employed a Euston-Generis sort of argument, saying that misrepresentation, when read in context, is essentially like defamation or libel or humiliation. It's acts of misrepresentation as to personal qualities going to personal injury, personal in the sense of an individual. I mean, that's the district judge's conclusion. Well, if that's so, what in the world is Exclusion 14 doing? Because Exclusion 14 should be unnecessary. I mean, in other words, I'm asking you to respond to the question, to the argument made by the other side. Okay. First of all, like many exclusions, like we saw just Exclusion Number 1, exclusions oftentimes are unnecessary in policies. They're belts and suspenders. But let's go to Exclusion Number 14. First of all, general principle, exclusionary language does not establish coverage. It takes it away. But it might help us interpret what the language earlier in the policy means. Right. And there's nothing in the personal injury coverage that says anything about your business pursuits or your property rights, anything like that. There's also nothing in the coverage part of it that limits representation except for this Euston-Generis argument, that is to say you take your coloring from your nearby friends. Other than, you're right, other than the language itself, which has been interpreted by the California Appellate Courts, to say that it doesn't get extended. Now, Exclusion Number 14, there are two parts of it. And I think they're only focusing on Section B because the first section, 14A, is a timing issue. And all it's saying is you don't get coverage for something that happened before the policy period if you made a defamatory remark. B says, concerning any business or service. It doesn't say the business or service of the insured. But the disparaging remark or defamatory remark is the remark made by the insured as to someone else's business, not as to his own business. Okay. So there's a distinction there. In addition, it also says, with awareness of its falsity. I don't get it. Meaning, I don't get it how it applies to this argument. The argument, the, Exclusion 14 is being used by your adversary to say that obviously misrepresentation goes beyond misrepresentation that applies to sort of reputation or personal characteristics of an individual. And you just said, yeah, well, this goes to the business of another. Well, I think that feeds into his argument. Well, but it doesn't say anything here in Exclusion 14 about a misrepresentation. So it's a defamatory, libelous, defamatory remark. But the argument that the district court found attractive was that she understood libel and defamation to go to personal qualities. But you're telling me that they don't merely go to personal qualities. And if they're broader, therefore, if we take the district judge's analysis, therefore, misrepresentation is also broader. Well, we're talking here about a slander of title claim that's being made underneath in the underlying action. That's what that is. And all the causes of action around that are slander of title. Clearly, slander of title is property right that is not under this, and that is what, as well, the appellate courts held and have held. So this does not apply. This is not an exclusion that applies to this case at all. And it cannot be used to establish coverage. And I like this. What about personal injury, that's Section 6C, right after the misrepresentation in B, invasion of rights of privacy, invasion of rights of occupancy, wrongful entry, wrongful eviction. Why couldn't those be construed as property-related? The Court of Appeal, as well, in the Bennett case, and later in the other cases as well, found that that doesn't cut it either. Again, slander of title, and there's a very good discussion of the theory behind this and the public policy behind it in the Bennett case written by, I think it was Justice Kitching. And that just doesn't cut it. It is not something that is contemplated by that personal injury. In fact, if you're a business and you want something more than a slander of title, then you get the kind of policy that the insured in the Atlantic Mutual case got. That is a broader, that's a business policy. This is a landlord policy about a home, a single-family home. Okay? That's what this is applying to. It is not a business policy as we have in the Atlantic case. So there are different types of policies, different types of coverage that are contemplated. We believe that's what the district court found, as well. If I could ask you this, on the assumption that the argument about exclusion number one, intentional and so on, is properly before us, which for me is a major assumption given that you didn't argue it, but on the assumption that's in front of us, why does that exclusion apply? And let me give you a hint of my problem with this exclusion. You've got some things in the coverage that are intentional torts. For example, libel and defamation, in my view, are intentional torts. Right. If this excludes intentional torts, what you've given with one hand, you've entirely taken away with the other, that is to say, you've written a self-canceling policy with respect to defamation and libel. Could you respond to me into what intention means here with respect to this exclusion? Well, first of all, this particular exclusion, number one, goes beyond personal injury, property damage as well. So it's a very broad exclusion. Well, yes, I understand that. That's part of my problem. That is to say, it's so broad that it seems to me that it makes some of the purported coverage here an absolute nullity. So that's to say, if this is to be read literally, the defamation and libel that you previously purportedly insured for is entirely absent. This is simply not insured against. This was giving me trouble with reading broadly this exclusion because I can't believe that a California court would read a policy that grants coverage for libel and exclusion at the beginning, would then read an exclusion clause to say we didn't mean it. Well, there are We didn't mean it in any part of libel or defamation. I understand. But what you're saying is that there can be no claim for defamation or something akin to a defamation claim. Because typically, my experience has been you have complaints for defamation. They're thrown in with other claims as well, claims that might be for negligence. No, I understand that. But I'm trying to figure out, intention can't mean, at least it doesn't seem to, it can't mean you exclude all intentional torts unless you're going to tell me that the policy misled me at the beginning when it pretended that it was insuring against defamation and libel. Well, I think that I understand what you're saying. I think this What does intention mean here in the exclusion? Well, this is, and within the context of this exclusion, this is an exclusion which says, and it's not just any one, it says, which may reasonably be expected to result from the intentional or criminal acts of an insured person, which is in fact intended by the person. Now, the problem that you sometimes Intentional act intended by a person, I got that. Now, how do you save any part of the libel and defamation coverage that you previously purported to provide? Or do you? Well, I think it's difficult to. Yeah. But I think you may be able to, depending upon how the complaint in an underlying action is pled, and what the types of claims are that may go with it. I guess my problem is I have trouble reading exclusion number one to mean what it says. And I also didn't see you ever making the argument based on exclusion number one. So I'm inclined to think that maybe exclusion number one is not in front of us, given both my difficulties of interpreting it and the fact that you never relied on it. Well, it's not something that we have argued, nor have we argued specifically Section 533 of the Insurance Code either, because we believed that before you get to exclusions, okay, that's how we started off this case. They have to come within coverage. You have to go to the insuring clause. If they don't get to the insuring clause, we don't get to exclusions. We don't talk about exclusions. And that is how California coverage law works. And therefore, as far as we're concerned, you don't get to exclusion 14, you don't get to exclusion 1, you don't need to get to any of those, because they don't get to first base on establishing coverage. So far, as has been pretty obvious, I've been making arguments that are unfavorable to you, but this is an argument that I guess I'd like to have responded on the other side, which is one favorable to you, which is I'm backing off on the policy a little bit. I mean, this is a policy written for the landlord. Now, the mortgagee is, I gather, from what we're assuming, is also a named insured now, that is to say, but as a mortgagee. And the mortgagee on a policy like this is typically an insured under the policy because they stand in the shoes of the landowner in the sense of damage to the property. They're going to get the insurance coming to them because they stand as the mortgagee. The typical under a homeowner's policy, the mortgagee is the lender, is the lien holder, the Bank of America. That's right. And I'm having trouble understanding, in terms of just what this policy is about, that this policy would ever be extended to a mortgagee who comes in and says, you owe me more money on the mortgage, and therefore are interfering with the sale. It just doesn't make any sense to me in terms of what these policies do. Well, we have, and I think we did say it in our brief, we reject the whole argument about the mortgagee because it takes a mortgagee and puts them in the place of being insured. If that were the case, Bank of America would be insured for every home that they are the lien holder on on a loan. But, see, I think they probably are insured, and I think we did insure them, but with respect to injury to the underlying property as to which they're the mortgagee. But they are not insured for purposes of their conduct. They are a beneficiary. That's the argument that I think I might agree with you on, which I think I want the other side to respond to. Oh, okay. The only other thing that I did want to mention, and that is on the – because it was brought up, the second cause of action in their complaint, which is the bad faith claim. This is not something that we argued specifically. However, on de novo, we think that it's clearly in the record and from the court's opinion as well that there could absolutely be no bad faith here with regard to all states' decision on coverage because the question here is an interpretation of the insurance policy. That is a legal question. We've had a district court already determine, as far as the court's concerned, after an objective reading of it and arguments by both, that there is no coverage. So, at a minimum, there is a genuine legal dispute as to coverage, and therefore, the dismissal of the bad faith claim clearly should be affirmed, even if. Well, suppose we disagree with you on the meaning of the word misrepresentation, and we conclude that Judge Snyder misread the policy. What then? Well, if Your Honor's believe that, then I believe the case would be remanded back. When opposing counsel says no, it need not go back. That determination could be made here and judgment entered. Well, I disagree because there's – judgment entered as to what? I mean, there's damages issues, et cetera. They have a breach of contract claim. So, I don't believe that it could just be – it would have to go back on remand. Well, if it goes back on remand with the interpretation adverse to the company, then what happens? Well, it doesn't mean that ultimately – because then we actually, as far as we're concerned, we go to the issue of which policy actually applies, whether it's 529. Our belief is under the – Heads, I win. Tails, you lose. I'm not quite sure. All that is here – all that is here before Your Honors is the question of whether or not there's coverage under 9700. That is the determination made by the district court. The district court put aside the other issues. Whether there's coverage under AP 529, for example, whether that policy even applies, whether they're insured in the first place. All the court says is assuming all of those things were in your favor, you still don't get to first base under AU 9700 because there's no coverage. Read truck versus bag. That's what the court says. If – and they've appealed the summary judgment ruling. If, therefore, the court – and you were to disagree with the court, then it's our belief that the summary judgment – all that happens is the summary judgment gets reversed and we're back in the trial court and we make our arguments. All I'm saying as well, though, is if that were to occur, we think that you can say what goes back is the issue of coverage and the breach of contract. But I'm clear. If the conclusion is that there is coverage, then doesn't that pretty well determine the duty to defend? Well, I don't think this Court can determine that there is coverage alone. I think all this Court can determine is that the Court made an incorrect ruling under 9700. But that, as far as we're concerned, does not establish coverage for the case because the other issue of which policy applies and whether they're insured, those issues are issues that are not before this Court because that was not – And were never reached by the trial court. Exactly. And, of course, the good faith issue as well. That's correct. Well, we're saying that on the good faith issue, since this clearly is an issue and the determination of it is a legal issue, that under a Scottsdale case, that issue, therefore, is, as a matter of law, it's a genuine legal dispute and all state cannot be held liable for bad faith. Is that, again, something that we decide or something that has to go back since the Court never reached it? But the Court did reach that there was and granted summary judgment on all clauses of action. We believe, therefore, that that is a determination of this Court. Okay. Mr. Laffer, you have some reserved time. Thank you, Your Honor. With regard to the question that Judge Fletcher asked about the scope of mortgage mortgages, page 15, paragraph 9, it says, the covered loss will be payable to the mortgagee named on the declarations page to the extent of their interest and in order of precedence. All provisions of this policy apply to these mortgagees. And you will recall in my brief that I pointed out that when Allstate changed this policy to... At the beginning of that paragraph, it talked about loss rather than liability. Correct. Correct. However, it talks about all provisions of this policy and the provisions of the policy that I'm referring to is that appellant's experts' excerpts of record at page 150, where it says, your liability, coverage X, business liability protection. That is not phrased in terms of just a simple homeowner. This is business liability protection and all provisions apply. With respect to Judge O'Scanlan's question regarding the second cause of action for breach of the covenant of good faith and fair dealing, it is important to note that Allstate did not cross appeal from the judge's ruling that we had standing in that we were insured for the purposes of this proceeding. And the only basis argued below with respect to bad faith was that a person that was not an insured could not, could not bring himself within standing to sue for bad faith. We presented substantial evidence that a fact finder, if you make a determination that there is a potential for coverage, that a fact finder could reach the conclusion under existing law that there is bad faith. We placed before the court evidence that the coverage counsel, the claims adjuster, the insurance agent, identified that we were insurers at all times and have been since 1995, that there was, that the policy applicable to this case was AU 9700, and we believe that it is fundamental that an insurer acknowledge the fact that a policyholder is in fact a policyholder, and that act itself is bad faith. With respect to the issue of whether or not truck insurance versus Bennett controls this case, as we have pointed out in our briefs, the only case that I have found that mentions misrepresentation is the Church case, and that gives the definition of misrepresentation. No case has been cited to your honors that is a general liability policy case dealing with business liability that discusses the scope or reach of the definition of misrepresentation. With respect to the application of the doctrine of, I'm going to try to pronounce it, eugistum generis. Eugistum generis. We don't believe that you apply that interpretation doctrine when you first have to read the four corners of the document. Why is that so? Just think about it. If you're trying to get to the intent of the parties, you want to get direct evidence of their intent by actually reading their words rather than reading their words than interpreting what they meant by one word as it compares to another word. And I asked the Court to read the Jarrett case versus Allstate, which clearly says that when you want to determine the scope of coverage of a policy, that you read all the terms relative to that coverage, and you don't go ahead and go into an analysis without reading the entire policy. And I believe that exclusion 14 clearly demonstrates an intent on the part of Allstate to cover business torts. And it makes no difference whether or not the business tort is called trade liable or clouding title. I think there's still a potential for coverage. And with respect to your question, Your Honor, about intentional torts, we cite the cases that essentially say that the intentional exclusion is designed to only reach that policyholder that takes an act to bring himself within the coverage of the policy. It does not. It does not mean that an intentional tort is not covered. I'm afraid I didn't understand that. What 533 has been interpreted to mean that a policyholder cannot take an act intentionally bringing causing an injury to bring himself within policy coverage. The intentional tort is clearly a cause of action that is regularly defended to the extent that there is a distinction. The distinction is made after trial to see whether or not there's been a finding of willfulness and there's been a finding of intent to commit an injury. But intentional torts are routinely defended in many cases that have come before you, Your Honor. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision. And we will hear argument in the last case for the morning of Brazil Quality, Stones v. Chertoff.
judges: Goodwin, O'scannlain, Fletcher